736 F.2d 503
 10 Collier Bankr.Cas.2d 1246, 1 Fed.R.Serv.3d 593,
Bankr. L. Rep. P 69,919,
15 Fed. R. Evid. Serv. 1584
 In re Paul J. BOILEAU, Debtor.
In re BOILEAU & JOHNSON, INC., a California corporation,
Consolidated Debtor.
Paul J. Boileau, Debtor and Debtor in Possession, Appellant,
Steven B. Dillaway, Court Appointed Examiner, Appellee.
 No. 83-6259.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 7, 1984.
Decided June 27, 1984.
 
 Gregg A. Johnson, Milberg, Johnson, De Phillips & Lamson, San Diego, Cal., for appellant.
 Chris Schatz, Lighter & Castro, San Diego, Cal., for appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before ELY, TANG and SKOPIL, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 This is a section 1292(b) interlocutory appeal from an order of the district court affirming the bankruptcy judge's ruling granting a motion by the court-appointed examiner to compel the production of certain documents claimed to be protected by the attorney-client privilege. We affirm.
 
 FACTS
 
 2
 The present appeal arises from bankruptcy proceedings initiated on June 21, 1982, by the filing of an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Paul J. Boileau ("debtor"), doing business as Boileau & Johnson. On July 13, 1982, the bankruptcy court ordered relief under Chapter 7 (Liquidation) of the Code. Thereafter, on July 15, 1982, the Court upon the debtor's motion converted the case to a Chapter 11 proceeding (Reorganization).
 
 
 3
 On July 29, 1982, the Official Unsecured Creditors' Committee brought a motion for the appointment of a trustee, which was opposed by the debtor. Subsequent to the filing of the motion, debtor's counsel proposed to the Committee that debtor employ an independent examiner, thereby obviating the need for a trustee. The Committee agreed, apparently on the condition that the debtor be removed entirely from business management and operations and that the Committee receive expanded powers. The bankruptcy judge felt, however, that a hearing should be held to determine whether to appoint a trustee. The court nonetheless approved a stipulation, which provided for the appointment of an examiner to investigate the business. The order appointing the examiner was entered September 2, 1982, and the motion to appoint a trustee was ultimately taken off calendar.
 
 
 4
 After the examiner's appointment, two of Boileau's secured creditors initiated adversary proceedings seeking relief from the automatic stay in bankruptcy in order to foreclose on deeds of trust securing promissory notes from Boileau & Johnson. The examiner and the Committee filed counterclaims, seeking to set aside the trust deeds as fraudulent conveyances.
 
 
 5
 Next, the examiner filed a motion in the two adversary proceedings to compel the production of four letters written to Boileau and his corporation prior to bankruptcy. The examiner stated that the documents were needed "to establish the true facts and circumstances during the time of the alleged fraudulent conveyances."
 
 
 6
 The bankruptcy court granted the motion to compel. The day after, however, the court granted summary judgment on the counterclaims in favor of the secured creditors and granted relief from the stay. Because the production of the letters was intended for the purpose of producing evidence to support these counterclaims, it might appear that the production issue is moot. Yet this is not the case. The examiner continues to demand the letters pursuant to the order compelling production. It is also apparent that the examiner seeks production of the documents independently of the two adversary actions.
 
 
 7
 The district court upheld the bankruptcy court's order compelling production and certified the case to this court pursuant to 28 U.S.C. Sec. 1292(b). We accepted jurisdiction.
 
 ANALYSIS
 I. Attorney-Client Privilege
 
 8
 Debtor argues that the bankruptcy court erred in compelling production of the letters, because they are protected by the attorney-client privilege. The existence of the privilege is not disputed. Rather, the dispute centers on whether the court-appointed examiner had authority to waive the attorney-client privilege. Boileau contends that this authority resides in him as debtor in possession, not in the examiner. The examiner maintains, however, that Boileau cannot invoke the attorney-client privilege. The examiner contends that he stands in the position of a trustee in bankruptcy and that he alone can waive the privilege.
 
 
 9
 The majority of courts have held that a trustee in bankruptcy has the authority to waive a corporate debtor's attorney-client privilege. See, e.g., Citibank, N.A. v. Andros, 666 F.2d 1192, 1195 (8th Cir.1981) ("the right to assert or waive ... privilege passes with the property of the corporate debtor to the trustee."); In re Inv. Bankers, Inc., 30 B.R. 883, 886 (D.Colo.1983) (trustee in bankruptcy succeeds to a debtor's right to assert privilege); In re Nat'l Trade Corp., 28 B.R. 872, 874 (N.D.Ill.1983) (same); In re Silvio De Linegg Ocean Devs. of Am., 27 B.R. 28, 28 (S.D.Fla.1982) (same); In re Featherworks Corp., 25 B.R. 634, 643 (E.D.N.Y.1982) (attorney-client privilege "passes by operation of law to the trustee in bankruptcy ...."). But see Commodity Futures Trading Comm'n, 722 F.2d 338, 342 (7th Cir.1983) (trustee in bankruptcy cannot waive corporate debtor's attorney-client privilege). No case law has come to this court's attention, however, as to an examiner's authority to waive the privilege. Yet we need not reach this issue under the distinctive facts of the instant case.
 
 
 10
 As a rule, an examiner's duties are more restricted than those of a trustee. In re American Bulk Transp. Co., 8 B.R. 337, 340 (D.Kan.1980). In the case at bar, however, an examiner with expanded powers was appointed by stipulation of the parties, to avoid designation of a trustee. Not only is the examiner in question directed to perform the customary duties imposed by 11 U.S.C. Sec. 1106(a)(3) (investigation) and (4) (filing and transmittal of investigative report), but he is also empowered to perform a myriad of functions normally carried out by a trustee. See Order Appointing Examiner (filed Sep. 2, 1982); 11 U.S.C. Secs. 704; 1106(a)(1). We therefore reject debtor's contention that the examiner lacked the authority to waive the attorney-client privilege.
 
 
 11
 We also reject Boileau's claim that only he, as debtor in possession, had the authority to waive the privilege. Although such authority can pass to a debtor in possession by operation of law, Featherworks, 25 B.R. at 643, it has not passed to the debtor in the instant case. Boileau's role as "debtor in possession" is nominal. He has been removed from any substantial participation in the management of Boileau & Johnson. Moreover, the Official Creditors Committee has been given the authority to carry out many of the functions of a debtor in possession and a trustee. Stipulation (filed Sep. 27, 1982). It is apparent that Boileau's role has been greatly limited both by the status of the Committee and of the "examiner". He retains no authority to assert the corporate attorney-client privilege and does not perform the functions of a debtor in possession under the terms of 11 U.S.C. Sec. 1107. See Moore v. Linahan, 117 F.2d 140, 144 (2d Cir.1941); Power Pak Prod., Inc. v. Royal-Globe Ins. Co., 433 F.Supp. 684, 687 (W.D.N.Y.1977) ("debtor-in-possession has no power except such as the court may allow").
 
 
 12
 Our holding is not to be understood as a ruling on the authority of an examiner to waive the attorney-client privilege. We simply hold that under the particular facts of this case the waiver authority resided in the examiner. Cf. In re O.P.M. Leasing Services, Inc., 670 F.2d 383, 386 (2d Cir.1982) (trustee had authority to waive privilege under peculiar facts of case).[1] The letters must therefore be turned over to the examiner. See also 11 U.S.C. Sec. 521; Ex Parte Fuller, 262 U.S. 91, 93, 43 S.Ct. 496, 497, 67 L.Ed. 881 (1923) (bankrupt has no right to delay transfer of property on ground that it contains incriminating evidence); 3 Collier, Collier on Bankruptcy, p 521.10 (15th ed. 1979).
 
 II. Fifth Amendment
 
 13
 Boileau also contends that compelling production of the letters would violate his fifth amendment right against self-incrimination. As a basis for this argument, Boileau claims that the letters were the direct result of confidential communications between himself and a law firm for the purpose of obtaining legal advice.
 
 
 14
 We reject the fifth amendment argument. The order to produce does not compel oral testimony and the letters do not contain compelled testimonial evidence. Fisher v. United States, 425 U.S. 391, 409-10, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). Furthermore, the letters were addressed to the general counsel or general partners of Boileau & Johnson in their official capacity. Under these facts, the fifth amendment privilege against self-incrimination is inapplicable. Bellis v. United States, 417 U.S. 85, 101, 94 S.Ct. 2179, 2189, 40 L.Ed.2d 678 (1974).
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Boileau has also failed to raise a valid individual attorney-client privilege claim. See National Trade Corp., 28 B.R. at 874; Silvio De Lindegg, 27 B.R. at 28. To be entitled to the privilege, Boileau had the burden to prove that he is entitled to its protection. Fischel v. United States, 557 F.2d 209, 212 (9th Cir.1977)